**Joseph BYRD, Petitioner,**

v.

**Joseph CRABTREE, Warden, Respondent.**

**Civil No. 98–07–HA.**

United States District Court, D. Oregon.

April 27, 1998.

Stephen R. Sady, Federal Public Defender, Portland, OR, for Petitioner.

Kenneth C. Bauman, U.S. Attorney's Office, Portland, OR, for Respondent.

## OPINION AND ORDER

HAGGERTY, District Judge.

### I. INTRODUCTION

The petitioner, Joseph Byrd ("Byrd"), is an inmate at the Federal Correctional Institution ("FCI") at Sheridan, Oregon. The respondent, Joseph H. Crabtree, is the Warden of FCI at Sheridan, Oregon, and is inmate Byrd's custodian and the proper respondent in this action. Fed.R.Civ.P. 81(a)(2); *Brittingham v. United States,* 982 F.2d 378, 379 (9th Cir.1992).

On January 5, 1998, Byrd filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Byrd's petition challenges the BOP's ruling finding him ineligible for a sentence reduction pursuant to 18 U.S.C. § 3621(e)(2)(B). Upon consideration of the parties' briefs, the relevant law, and the record herein, the court grants Byrd's petition

for a writ of habeas corpus, for the reasons set forth in the opinion and order below.

## II. BACKGROUND

Byrd is serving a four-year term of imprisonment at FCI Sheridan for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and for use of a telephone to facilitate the distribution of cocaine in violation of 18 U.S.C. § 843(b). The record show that on September 24, 1996, the BOP made a entry in its records reflecting Byrd's ineligibility for early release. Subsequently, on October 7, 1996, the BOP notified Byrd, in writing, that he was ineligible for early release because of a May 28, 1987 prior conviction in the state of Washington for assault in the second degree. Notwithstanding this notification, Byrd entered into the first phase of the drug abuse treatment program on September 27, 1996. Byrd completed the first phase of the program on September 24, 1997, and according to BOP records is currently participating in the second phase of the program.

Pursuant to 18 U.S.C. § 3621(b), Congress provided that the BOP shall make available appropriate substance abuse treatment for each prisoner the BOP determines has a treatable condition of substance addition or abuse. On September 14, 1994, Congress enacted the Violent Crime Control and Law Enforcement Act which amended Section 3621 to allow the BOP to grant federal inmates convicted of a nonviolent offense up to a one year sentence reduction for the successful completion of a drug rehabilitation program. 18 U.S.C. § 3621(e)(2)(B).

Then, on May 25, 1995, the BOP promulgated 28 C.F.R. § 550.58 to implement the Act and establish the program's specific eligibility requirements. The regulation states, in pertinent part, that:

[a]n inmate who completes a residential drug abuse treatment program during his or her current commitment may be eligible for early release by a period not to exceed 12 months, in accordance with paragraph (a) of this section, ... unless the inmate's current offense is determined to be a crime of violence as defined in 18 U.S.C. Section 924(c)(3), or unless the inmate has a prior federal and/or state conviction for homicide, forcible rape, robbery, or aggravated assault.

28 C.F.R. § 550.58. The supplementary information published at the same time as Section 550.58 states the following:

[i]n exercising the Bureau's discretion in reducing a sentence, the Bureau shall also review the criminal history of the inmate contained in the presentnece Investigation Report, and any inmate with a federal and/or state conviction for homicide, forcible rape, robbery, or aggravated assault shall also be excluded from consideration. Because state convictions may show a considerable range in the degree of violence used in the offense, the Bureau has chosen to use the above cited categories of crimes, which are reported under the FBI Violent Crime Index, as the sole determinant of violence in criminal history.

Early Release Consideration, 60 Fed.Reg. 27692 (May 25, 1995).

## III. DISCUSSION

Byrd raises two challenges to the BOP determination that he is ineligible for early release under 18 U.S.C. § 3621(e)(2)(B). First, Byrd contends the BOP's decision was improper because the BOP ignored its own regulations and standards by looking to the underlying facts of his prior assault conviction. Second, he argues that the BOP decision to characterize his 1973 Washington state conviction for assault in the second degree as an aggravated assault is impermissible because the crime he was convicted of may lack the element of intent to inflict severe or aggravated bodily injury as required by the FBI Violent Crime List. The court agrees with Byrd on both challenges.

### A. The BOP impermissibly relied on the underlying facts of Byrd's prior conviction

■ The supplementary information published at the same time as Section 550.58, requires the BOP to determine if an inmates' prior conviction for assault is equivalent to an aggravated assault under the FBI Violent Crime Index. In the present case, the records indicates that in reaching its decision to

exclude Byrd from eligibility consideration, the BOP solely relied on the underlying facts described in Byrd's presentence report.

For instance, the record shows that in response to Byrd's informal administrative complaint regarding his Section 3621(e)(2)(B) ineligibility, the BOP provided him with a document entitled, "Informal Resolution." This form document was dated July 30, 1997, and notified Byrd that:

> The language reflected in your PSI pertaining to the offense you refrenced [sic] above would indicate that the assault was aggravated. The victim received multiple stab wounds that required several days of hospitalization to recover. This reflects an aggravated assault and therefore does preclude you from receiving the year off under 18 USC 3621(E). Your request for relief is denied at this time.

*See* Petitioner's Reply, Exhibit B. Subsequently, in response to a formal Request for Administrative Remedy, Warden Crabtree responded, in pertinent part, that:

> Investigation reveals that on May 28, 1987, you were convicted of Assault II in Seattle, Washington. The State of Washington does not codify the offense of Aggravated Assault. However, Assault II consists of knowingly inflicting bodily harm which causes pain equivalent to that produced by torture. Your PSI reflects that during the commission [sic] the offense in question, you hit the victim several times, broke a mirror over the victim's head, and stabbed the victim repeatedly with broken glass. Under these circumstances, the victim's pain was arguably equivalent to that produced by torture and sufficiently egregious to be considered Aggravated; thus, you are not eligible for early release consideration.

*See* Petitioner's Reply, Exhibit C.

Based on the language used by the BOP in response to both Byrd's informal and formal attempts to resolve his complaint, it is clear that the BOP resorted to and relied on the conduct described in his presentence report in concluding that Byrd's prior conviction was "tantamount to aggravated assault." In response, Respondent admits that the underlying facts of a prior conviction are irrelevant to a Section 3621(e)(2)(B) eligibility determination. *See* Respondent's Answer at 11. Accordingly, this court rules that pursuant to its own rules and regulations, the BOP cannot engage in any fact-finding with respect to an inmates' prior offense in making prospective eligibility determinations.

**B. Byrd's prior conviction for assault in the second degree in not equivalent to aggravated assault as defined in the FBI Violent Crime Index**

■ Next, the court must determine whether the BOP properly determined that Byrd's prior offense is the equivalent to aggravated assault as defined under the FBI Violent Crime Index. Byrd was convicted of assault in the second degree in Washington state. However, because the state of Washington does not use the term "aggravated" to differentiate between degrees of assault, the court rules that a proper analysis for purposes of Section 3621(e)(2)(B) requires a comparison between the definition of aggravated assault as defined in the FBI Violent Crime Index and the definition of assault in the second degree as defined by the Washington Criminal Code. *See* 28 C.F.R. § 550.58.

According to the FBI crimes list, aggravated assault is:

> . . . an unlawful attack by one person upon another for the purpose of inflicting severe or aggravated bodily injury. This type of assault is usually accompanied by the use of a weapon or by means likely to produce death or great bodily harm. Attempts are included since it is not necessary that an injury result when a gun, knife, or other weapon is used which could and probably would result in serious personal injury if the crime were successfully completed.

*See* F.B.I. Uniform Crime Report, App. II. On the other hand, the definition for assault in the second degree under the Washington Criminal Code states:

> (1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:

(a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm; or

(b) Intentionally and unlawfully causes substantial bodily harm to an unborn quick child by intentionally and unlawfully inflicting any injury upon the mother of such child; or

(c) Assaults another with a deadly weapon; or

(d) With intent to inflict bodily harm, administers to or causes to be taken by another poison or any other destructive or noxious substance; or

(e) With intent to commit a felony, assaults another; or

(f) Knowingly inflicts bodily harm which by design causes such pain or agony as to be the equivalent of that produced by torture.

Wash.Rev.Code Ann. Section 9A.36.021 (West 1997).

After comparing the definition of the FBI Violent Crime Index for aggravated assault with the Washington Criminal Code definition of assault in the second degree, this court is of the opinion that the BOP erred in finding the two definitions indistinguishable. Importantly, the definition of assault in the second degree under subsection (1)(a) lacks the specific intent to inflict harm. It states, in pertinent part, "intentionally assaults another and thereby *recklessly* inflicts substantial bodily harm." (Emphasis added) In contrast, the FBI definition states, in pertinent part, "for the *purpose* of inflicting severe or aggravated bodily injury." This later definition requires that the infliction of severe or aggravated bodily injury be intentional. Because as a mater of law recklessness can not be equated to purposeful intent, assault in the second degree in Washington state cannot be equated to aggravated assault under the FBI Violent Crime Index. Accordingly, the BOP's determination that Byrd's prior conviction for assault in the second degree precludes him from seeking a one-year sentence reduction pursuant to Section 3621(e)(2)(B) is incorrect.

## IV. ORDER OF THE COURT

For the foregoing reasons, it is

**ORDERED** that Byrd's petition for a writ of habeas corpus (doc. # 1) is **GRANTED**; and it is

**FURTHER ORDERED** that this case be remanded to the BOP for further proceedings consistent with this opinion and order.[1] **IT IS SO ORDERED.**

---

1. The BOP is directed to immediately transfer Byrd to a Community Corrections Center if there is no other basis for denying him early release consideration under Section 3621(e)(2)(B).